Mr. Ellickson. Thank you, Judge. May it please the Court, Brian Ellickson, attorney for Appellant Linda Weirick in this Social Security Disability case. I will track my time and I will attempt to withhold one minute for rebuttal. This is a case pertaining to the denial of Ms. Weirick's application for Social Security Disability benefits. The ALJ denying the case made errors in a couple of areas, particularly with her evaluation of the opinion of Ms. Weirick's treating physicians and with regards to the ALJ's evaluation of Ms. Weirick's testimony and reporting. On the treating physician opinions, two physicians, including a pain management specialist, Dr. Feldman, offered opinions inconsistent with sustained work, according to the agency's own vocational expert. The point I'd like to focus on first is Dr. Feldman, on page 765, notes that Ms. Weirick would be expected to be off-task 11 to 15 percent of an eight-hour day because of her symptoms of pain and fatigue. This is an opinion that is not contradicted by any other position in the file. It's also an opinion that was not adequately addressed by the ALJ in her decision. The ALJ's broad leading... 16 to 20 percent of the time. Her earlier opinion was 11 percent, I thought. That is correct, Judge. It's interesting because the second opinion, and this is something that the judge notes in her decision, the second opinion defines the off-task 16 to 20 percent due to pain, fatigue, and depression. To the extent that the ALJ addresses Dr. Feldman's off-task opinion at all, she addresses the fact that he's not a mental health professional. But she never addresses the effect of pain and fatigue on Ms. Weirick's ability to be on-task during a workday. The earlier opinion does not include any reference to depression, only involves a reference to pain and fatigue, and finds that simply based on those factors, she would be off-task 11 to 15 percent, a level to which is not sustainable in a work setting. That was noted by the vocational expert at hearing. Counsel, excuse me. I think that's right. Look at that carefully. But the ALJ decided to give little weight to the treating physician's testimony, and there's a standard for that. Could we talk about that? Absolutely, Judge. Two standards apply. If there's contradictory evidence, a specific and legitimate standard applies, always remembering that substantial evidence has to underlie the decision. In the case of an uncontradicted opinion from a treating physician, a clear and convincing standard applies. We would posit that a clear and convincing standard does apply to the off-task opinion from the treating physician, particularly that of Dr. Feldman, the treating specialist. The commissioner, in his brief, indicates that no other physician, no consulting physician or state agency, a non-examining physician was asked about off-task because it wouldn't be warranted, or they didn't opine to it because it wouldn't be warranted. That's directly contradicted by the ALJ's own finding, where the ALJ finds that Ms. Weirich would be expected to be off-task only 5 percent of an eight-hour day. So there's some level of off-task behavior that's expected, and given that the treating physician opined directly to that issue, directly within the subject of his expertise, pain particularly, that warranted more consideration than that given by the judge, which was really no consideration. Now, of course, the opinions from Dr. Feldman and Dr. Manzanares, the primary care physician, are broader than just the off-task limitation. The ALJ did give some rationales for broadly discounting those opinions. For example, she finds them, this is at ER 29, extreme in light of the clinical signs and laboratory findings. She doesn't offer any citations for that physician. She does summarize some of the medical evidence of record earlier in the decision, particularly when discussing Ms. Weirich's testimony. But there's no analysis of what part of the physician's opinions are contradicted by the records and why. And that leaves this court, this leaves Ms. Weirich guessing as to the actual reasons for that. So is your argument, forgive me, just to put a bow on that, I'm trying to follow you. I'm trying to figure out whether or not which standard you think applies. Is it your position that even if the specific and legitimate standard applies, that the opinion falls short? It is, Judge. Okay, thank you. Go ahead, Judge. Go right ahead. No, go right ahead. You've answered my question. Thank you. The specific and legitimate standard does apply to particularly the sitting, the standing, the walking parts of the opinion. And the lack of articulation is fatal here because no one knows, not the court, not me, not Ms. Weirich, why exactly those opinions were discounted. There are other rationales that have been given by the ALJ. She looked at the format of the opinion, finding it to be a checklist format. But this court in cases such as Treviso and Garrison cautioned ALJs not to simply discount an opinion based on its format. The court in Treviso found that there's no evidence that a checklist style opinion is any more or less reliable than any other kind of physician opinion. And so that rationale appears to not be specific, legitimate, and based on substantial evidence. The ALJ found that activities of daily living, broadly speaking, which she found to include sitting and walking are inconsistent with the physician's opinion. But again, there's no why. The physicians opined that Ms. Weirich can sit, stand, walk up to about four hours in an eight-hour day. And there's no indication of what activity of daily living is inconsistent with that. You know, this is not a case. Counsel in some of his briefing indicated the case of Ford v. Saul. This is not a case like the physician in Ford where someone says their patient can only stand for five minutes at a time. The opinions are not that drastic in this case. There are limitations. They are inconsistent with full-time work. But they are not an indication that Ms. Weirich is completely debilitated. She does retain some level of functioning. And it's not inconsistent with that. I would like to turn briefly to Ms. Weirich's testimony at hearing. The judge found that to be not credible. She found, offered some rationales for that. The activities of daily living, again, were discussed. Again, no analysis of how those are performed or why they are inconsistent with Ms. Weirich's testimony. The activities are remarkably benign. The activities were listed as things like going to church, boiling chicken for a pet, engaging in self-care. This is not inconsistent with Ms. Weirich's testimony where she testified that she can sit for about an hour at a time or stand or walk for an hour at a time but needs to take breaks during the day to lie down because of pain. The inconsistencies are not fleshed out by the ALJ. And they're not fleshed out. There's simply no inconsistency. The ALJ looked at the reasons Ms. Weirich left the workforce and found that at least in part it was for a non-health-related reason and appears to infer that she could have returned to work had she not been laid off. But the evidence in the record indicates that although she was laid off, there were absences prior to that. Ms. Weirich believed that was a predicate for her termination, that she was absent from work because of medical symptoms, medical appointments. And to tie a bow on that point, even the ALJ finds that Ms. Weirich cannot return to her past work. And so using that rationale appears to contradict itself. The ALJ finds that she can't go back to work but appears to find that she could have worked after her testimony and certainly not based on substantial evidence here. The ALJ cited the gaps in physical therapy treatment. But the evidence of record indicates that those gaps were explained by the fact that Ms. Weirich found it to be too painful. At ER 810, she tells her physician that. At ER 975, she indicates that she can't do the home exercises with regularity because they're too and the utilization of those gaps by the judge is simply not a legitimate rationale. It's certainly not clear and convincing in this case, Judge. I see that I'm running short of time and I would like to save the last minute for rebuttal unless there are any other questions from the panel. It doesn't appear there are. Thank you. You're welcome. We'll hear from the opposing counsel, please. Good morning. Asim Modi on behalf of Andrew Sell, Commissioner of Social Security. Your Honor, the issue here is whether the record established claims of disabling limitations set forth by the claimant to overtrain physicians. Mr. Modi, we're having a hard time. At least I'm having a hard time hearing you. Oh, I'm sorry. That's all right. If you could get a little closer maybe or something. And just keep your voice up if you would. Can you hear me better now? I can. Okay. Excellent. Sorry. I'll speak louder. I apologize. Let me start over again. Sure. So, Your Honor, the issue here is whether the record established claims of disabling limitations from claimant and to overtraining positions. The ALJ recently found that it did not and the ALJ's decision highlights the chasm between what was alleged and what the record actually proves. So, I want to start with the ALJ's analysis of the treating physician's opinions. The ALJ provided a multitude of reasons, each of which was legally sufficient under this court's precedent for rejecting the claims of Dr. Feldman and Dr. Manzanares about claimant's alleged inability to work. Which standard applies? Which standard applies? Yes, Your Honor. So, we submit that these opinions were contradicted, Your Honor, and so by the examining of viewings about claimant's ability to perform a range of life work. So, consequently, under this court's precedent, the specific and legitimate standard would apply. Okay. Why are they contradicted? Where are they contradicted, please? Yes, Your Honor. So, the contradiction is basically you've got two physicians opining, as my colleague mentioned, that claimant is disabled. Then you've got two other physicians, the reviewing and examining physicians, who all conclude that claimant can perform a range of work. So, the contradiction is in the ultimate finding. Can claimant work or not? You have one physician saying that claimant can perform a range of life work, and you have another set of physicians saying that claimant can't. That's not really true, is it, Mr. Mody? Don't all the physicians generally agree on the diagnosis? Yes, Your Honor. Okay. The medical diagnoses are all the same, basically. It's that your consultants don't agree with the degree of disability found by the treating physicians, and that's based on one physical examination and then review of some of the plaintiff's records or the applicant's records, correct? Yes, Your Honor. Not all of her records, right? Well, Your Honor, the opinions that are cited here, except from Dr. Fellman's February 2016 opinion, the remainder of the opinions are clustered together in time. And so, Dr. Fellman and Dr. Manzanares were literally issuing their opinions at the same time as the examining and reviewing physicians. All these opinions were issued throughout 2014. And so, aside from the one opinion that was issued later in time, every other opinion is clustered in time. And so, whatever evidence was available was essentially the same body of evidence. And I'd like to also note as well that the reviewing physicians did Dr. Fellman's available treatment records at that time. And they noted that Dr. Fellman had observed, claimed it had normal gait, strength, normal neurological... Your consulting physician didn't even say she had a normal gait. He said she had an antalgic gait. Do you know what an antalgic gait is? It's not normal, but he classified it as mild, right? Yes, Your Honor. Okay. But the examining did also note that claiming it had normal tandem gait. She had normal movements, had normal gait. And so, the remainder of the exam, she was able to shift positions without difficulty. And so, the examining physician's other findings, aside from the mildly antalgic gait, were benign. And the examining physician did opine that claiming it could perform a range of light work, despite that finding. And so- Counsel, if specific and legitimate is the standard, if you have to make specific and legitimate, can you satisfy that standard? Yes, Your Honor, because the ALJ provided a number of reasons, each of which are legally sufficient under this court's precedent. Opposing counsel looks at ER 29 and says that what she said was that the treating physician's opinions are too extreme in light of clinical signs and laboratory findings. Does not strike me as specific. Well, Your Honor, I think we're looking at just that paragraph in ER 29 does not view the decision in the proper context. Because on ER 28, which is the preceding page, obviously, there's a summary of both of Dr. Feldman's own clinical findings, Dr. Feldman's reports about claimant's treatment history, the other findings from the other physicians. And so, when you view those two pages together, you can see easily what the ALJ is referring to. When the ALJ, for example, evidence of medication effectiveness on ER 29, on ER 28, the ALJ is referring to Dr. Feldman's own observations about plaintiff's claimant's good relief without significant side effects or reports of increased functionality to Dr. Feldman. And notably, these observations are completely absent from Dr. Feldman's questionnaires. And I think that gets to the point my colleague was mentioning about checkbox forms and what this court has held. As this court recently reaffirmed in Ford v. Saul earlier this year, an ALJ is not required to accept opinions at face value, and an ALJ can look at the quality of the explanation when evaluating the probative weight of the opinion. And here, the ALJ noted that there was a complete lack of objective explanation for how Dr. Feldman and Dr. Manzanares reached their conclusions. They did not explain the basis for these conclusions, for their conclusions, and that was especially egregious in this case, because you have Dr. Feldman who consistently observed between 2014 and 2015 the claimant consistently had normal gait, strength, negative straight leg raised testing, intact range of motion throughout her extremities, good relief with pain medication without significant side effects, and increased functionality. Again, none of which were mentioned in these questionnaires. And so that is wholly sufficient of this court's precedent as a basis for rejecting Dr. Feldman's conclusions. And the ALJ went beyond that by also noting both the effectiveness of treatment, which went unmentioned by Dr. Feldman, and the inconsistency with the remainder of the objective medical evidence. As the ALJ notes on ER27 and ER28, claimant repeatedly denied experiencing gastrointestinal, general urinary, and psychiatric complaints. Claimant's other treatment providers similarly observed normal gait and strength and no neurological abnormalities. And so it is this divergence between what the record shows and what these physicians concluded, and similarly what claimant herself concluded, which is the underpinning of the ALJ's non-disability finding here. It is not in dispute that claimant has severe impairments significantly limited her ability to work. The question is whether she met the burden of showing that she was disabled under the act. And given the extensive benign evidence cited the ALJ's decision, the ALJ reasonably found the claimant didn't meet that burden. ER page 32, there's a discussion of other jobs available in the economy that she could perform. The ones are listed, booth cashier with 850,000 national jobs, office helper with 75,000 national jobs, and a routing clerk with 95,000 jobs. I have to think were that analysis done today, those numbers would be probably close to zero for office helper and routing clerk and for booth cashier. There certainly are 850,000 of those jobs in the national economy. Under what standard do we review that? Do we review that analysis as of 2013 or do we analyze that as of 2020? Well, Your Honor, I think we're looking at it at the time the ALJ issues her decision, whether substantial evidence supports that finding. And so we're looking at whether this VE testimony here supports the ALJ's finding at the time it was issued. Because, you know, if you look back at all kinds of ALJ decisions, you're going to have jobs that typically don't exist at this time. And so we're looking at, we're looking kind of frozen in time in March, 2016, not obviously the circumstances that we all face right now, where some of these positions would have obviously been prohibited. And so we're looking at whether the VE's testimony at the time of the hearing constitutes substantial evidence for the ALJ's non-disability finding. And here, there was no objection, I'd like to note as well, about the job number cited by the VE at the hearing. And so that absence of any objection under this Court's precedent, Shaibi, and reinforced subsequently, these numbers simply do not dispute, and there can be really no question about them here. Now, if she wanted to say, well, you know, gravity has changed, right? The laws of physics no longer apply to this case, would she file a new claim or she file motion for reconsideration in the ALJ? How would that work procedurally? Well, Your Honor, the claimant can file a new application. And so obviously, so she would file a new application, pick whatever alleged disability she would prefer, and then it would just be adjudicated from that period onward. Now, I think it would depend on the nature of the claim. If she were filing a Title 16 claim, we'd be looking at the application date forward, up until the date of the ALJ or the adjudicated decision. This claimant here has a date last insured, sort of the date she last met the insured status requirements of Title II of the Social Security Act. That is December 2015. So Title II claim is sort of frozen in time from up until that date, but any claim filed again under Title 16 of the Act, that would be prospective. And so if claimant were to file another Title 16 application as of today, Your Honor, then that time period is looking forward, and she would obviously be entitled to produce any new evidence that shows deterioration in her physical or mental condition to support her claim. But for the period that we're looking at here, we'll submit that the ALJ's non-disability finding clears the not-high threshold for substantial evidence, was entirely consistent with relevant legal authority, and my time's running out. So we ask that the Court uphold the District Court's affirmance of the Commissioner's final decision in this case. Any further questions? It doesn't sound like my colleagues have any further questions. Thank you for your argument, Mr. Modi. Oh, thank you. I apologize for the delay. You did just fine. Thank you so much. We've got a couple minutes left for rebuttal. Thank you, Your Honor. Hold on, hold on, hold on. Madam Clerk, could you put two minutes on the clock, please? There you go. Go right ahead. Thank you, Your Honor. Just to answer the question from I believe it was Judge Owens, as to whether or not Ms. Weirich can reapply, if she's not financially eligible for SSI, which she did not apply for in this application, she cannot reapply. Her insured status has expired, and essentially this is it. My colleague talked a little bit about medication effectiveness and how that wasn't reflected in the opinions of the treating physicians. I think it's notable that the treating physicians themselves noted the use of medication, for example, and the use of treatment. We see already, ER 1028, Dr. Feldman indicates some side effects from medication. So they're clearly aware of the treatment. They're not offering these prescribed or treatment is not being engaged in. And to the extent that the argument is that medication has been or treatment has been effective, we see ongoing narcotic pain medication, ongoing injections. These are not treatments that would be continually pursued in the absence of severe symptoms. And just briefly on remedy, we are asking this court to remand for a computation of benefits. The vocational expert's testimony at hearing was very clear. The treating physicians have applied to limitations which are inconsistent with sustained work. They did so in terms of their sitting and standing and walking limitations. They did so in terms of the off-task and absences. And Ms. Weirich's own testimony, including the need for intermittent breaks during the day, is not consistent with the ability to perform sustained full-time work. There's no serious doubt of disability in this case. A remand for a computation of benefits would be appropriate here, and we would ask the court to make that finding. And unless there are any other further questions, I see my time is expiring. And so I'd open it up to questions if there are any. Doesn't look like we have any questions. Thank you so much for your argument. Thank you both. Thank you, Your Honor. That's the last case that we have on the calendar for today. So with that, we'll go ahead and stand and recess. This court for this session stands adjourned.
judges: Christen, Owens, Bataillon